UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HORTENCIA NIEVES,

    Plaintiff,

v.                                                                  Case No. 8:21-cv-2273-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## ORDER

    Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits (DIB).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider and account for Plaintiff's subjective complaints regarding her trigger finger condition and her headaches. As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    *I.*     *Background*

    Plaintiff, who was born in 1967, claimed disability beginning January 1, 2017 (Tr. 372). She was 49 years old on the alleged onset date. Plaintiff obtained a high school education, and her past relevant work experience included work as a loan service representative and a loan review analyst (Tr. 70-71, 81, 398-99). Plaintiff

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

alleged disability due to a thyroid condition, depression, anxiety, panic attacks, and carpal tunnel syndrome in both hands (Tr. 397).

Given her alleged disability, Plaintiff filed an application for a period of disability and DIB (Tr. 372-73). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 176, 193, 225-27, 231-36). Plaintiff then requested an administrative hearing (Tr. 237). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 109-62). Following a hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 194-216). Plaintiff then requested review by the Appeals Council (Tr. 320-21). Upon review, the Appeals Council remanded the case back to an ALJ for further proceedings (Tr. 217-21). Specifically, the Appeals Council directed the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations" (Tr. 218).

Following remand from the Appeals Council, the ALJ conducted a telephonic administrative hearing, after which he rendered an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-42, 61-94). In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022, and had not engaged in substantial gainful activity since January 1, 2017, the alleged onset date (Tr. 17-18). After reviewing the evidence of record, the ALJ determined that Plaintiff had the

following severe impairments: status-post remote history of carpal tunnel syndrome with release surgery; bilateral trigger fingers, status-post trigger release of the left middle, ring, and small fingers; inflammatory arthritis; degenerative disc disease, cervical and lumbar spine; migraine headaches; uterine prolapse; status-post hysterectomy with mesh repair and revision; osteoporosis; osteopenia; depressive disorder; and anxiety/panic disorder (Tr. 18).  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19).  The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following limitations:

> The claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to six (6) hours in an eight-hour workday; and sit for up to six (6) hours in an eight-hour workday. Handling would be limited to frequently, bilaterally.  The claimant would need to avoid concentrated exposure to fumes, odors, dust, gasses, and pulmonary irritants.  Additionally, while the claimant can stand and/or walk up to six (6) hours in an eight-hour workday and sit up to six (6) hours in an eight-hour workday, the claimant requires a sit/stand option at unpredictable intervals, but as frequent as every 30 minutes.  Specifically, the claimant would need to be allowed to alternate positions for up to 10 minutes, while remaining on task.  Further, the claimant is limited to simple, routine tasks.  The claimant is also limited to low-stress work, and is therefore precluded from work that requires arbitration, negotiation, confrontation, conflict resolution, and directing the work of others, or being responsible for the safety and welfare of others as the primary function of the job.  The claimant can perform tasks and maintain focus that is needed to perform Reasoning level 1 and 2 jobs as defined by the Dictionary of Occupational Titles and the Selected Characteristics of Occupations.  The claimant cannot perform fast-paced or production[-]pace work.

(Tr. 22). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 23-24, 28).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform her past relevant work (Tr. 33). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an office helper, an electrical accessory assembler I, and a router (Tr. 34-35, 81-84). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 34-35). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 367-68). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

## II.   *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental

impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and

is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    *III.    Discussion*

Plaintiff argues that the ALJ erred by failing to properly consider Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of Plaintiff's trigger finger condition and the symptoms associated with Plaintiff's headaches. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC

6

and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms,[2] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). Rather, to establish a disability based on testimony of pain and other symptoms, the claimant must establish evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225. Consideration of a claimant's symptoms therefore involves a two-step process, wherein the ALJ first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the ALJ determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *3-9. The ALJ may determine that a claimant's symptoms, including pain, diminishes the claimant's

---

[2] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. § 404.1502(i).

capacity for basic work activities to the extent that the claimant's "alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). When the ALJ does not find the claimant's subjective testimony supported by the record, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell*, 771 F.3d at 782; *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted).

As noted, after determining that Plaintiff suffered from the severe impairments of status-post remote history of carpal tunnel syndrome with release surgery; bilateral trigger fingers, status-post trigger release of the left, middle, ring, and small fingers; inflammatory arthritis; and migraine headaches, among others, the ALJ concluded that, though Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 23-24, 28). In reaching that conclusion, Plaintiff asserts that the ALJ erred in two respects. Plaintiff first contends that the ALJ erred in finding that Plaintiff was limited to frequent bilateral handling given Plaintiff's severe trigger finger impairment, especially in conjunction with her arthritic condition. Plaintiff additionally argues that, although the ALJ correctly determined that Plaintiff's headaches constituted a severe

9

impairment, the ALJ erred by failing to include any limitations in the RFC to address Plaintiff's headaches. Notwithstanding Plaintiff's arguments to the contrary, the ALJ provided substantial evidence in support of his evaluation of Plaintiff's subjective complaints regarding the trigger finger condition and headaches.

      A.    Trigger Finger

Turning first to Plaintiff's trigger finger condition, Plaintiff contends that a limitation to frequent use of her hands given her trigger finger condition, which causes her fingers to lock up in a bent position, does not fully encompass her limitations because it does not account for her inability to use her hands at a time when a job requires the use of hands. In support of her contention, Plaintiff points primarily to her diagnoses – the trigger finger condition and rheumatoid arthritis – and her subjective complaints. "Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Rather, "[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*).[3] Furthermore, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Plaintiff's primary

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

reliance upon her diagnoses therefore does little to further her position, especially considering the evidence of record supporting the ALJ's decision.

As noted, the ALJ found that Plaintiff's status-post remote history of carpal tunnel syndrome with release surgery; bilateral trigger finger condition, status-post trigger release of the left middle, ring, and small fingers; and inflammatory arthritis constituted severe impairments (Tr. 18). Given the severity of those impairments, the ALJ limited Plaintiff to only frequent bilateral handling (Tr. 22). In making that determination, the ALJ thoroughly discussed the medical evidence of record relating to Plaintiff's hand impairments (Tr. 24-26). For example, in April 2017, results from an electromyogram and nerve conduction studies all fell within the normal range and limits and were symmetrical right to left (Tr. 24, 655). Dr. James Patterson determined that Plaintiff did not meet the electrodiagnostic criteria for a diagnosis of entrapment of either the right or left median nerve at the carpal tunnel, as the carpal tunnels were within normal limits without evidence of re-entrapment (Tr. 655). According to Dr. Patterson, no electrophysiological evidence supported a diagnosis of cervical radiculopathy, either acute or chronic; plexopathy; peripheral neuropathy; myopathy; or motor neuron disease since there was "no evidence of entrapment of the right or left median nerve at the carpal tunnel or the right or left ulnar nerve at Guyon's canal or the cubital tunnel or a right or left radial nerve involvement" (Tr. 656).

That same month, Plaintiff complained of numbness to the bilateral hands to Scott Gargasz, M.D. and demonstrated tenderness to palpation on her fingers, but her joints were stable to motion and her digits all showed normal range of motion with all

11

tendons intact (Tr. 24, 679-80). Interestingly, Dr. Gargasz noted that Plaintiff's work status was full duty/activity at that time (Tr. 680). Further, as the ALJ discussed, Plaintiff subsequently received temporary improvement after injections to the affected fingers and bilateral wrists and described her pain as minimal but also exhibited tenderness, occasional decreased range of motion of the bilateral hands secondary to pain, and subjective numbness to the bilateral hands throughout 2017 (Tr. 24, 662-78). Plaintiff also briefly participated in physical therapy for her hands but stated that she stopped due to pain (Tr. 24, 671).

Notably, however, in August 2017, Plaintiff underwent a successful trigger release surgery for her left middle, ring, and small fingers (Tr. 24, 659). Indeed, she presented in late August 2017 with near full range of motion to multiple digits on her left hand with no signs of infection or numbness/tingling to the left hand, though she still endorsed pain to her right middle and ring fingers (Tr. 24, 666). MRIs of the bilateral wrists taken in November 2017 showed tendosynovitis of the extensor pollicis longus, extensor carpi radialis brevis, and longus tendons of the left wrist; sprain of the ulnar attachment of the triangular fibrocartilage of the left wrist; likely degenerative subcortical cyst in lunate in the left wrist; a mild sprain of the ulnar margin of the TFC without disruption or perforation in the right wrist; and a small ganglion cyst along the wrist (Tr. 24, 832-33, 835). As the ALJ articulated, her follow-up appointment the next month with Dr. Gargasz, Plaintiff showed positive Tinel's sign to the left neck that radiated down to her hand (Tr. 24, 823-26). According to Dr. Gargasz, Plaintiff indicated that she experienced no relief after injections, but, because there was no

evidence of trigger fingers or tendonitis to the right or left hand, except as to the left EPL with no pain, and strain to the TFC with no tear, he expressed difficulty determining where her pain was and where it was coming from and thus referred her to a neck surgeon for an evaluation (Tr. 24, 825).

The ALJ also noted that Plaintiff received treatment for her hands with her primary care provider, Juan Candelarlo, M.D., who did not document any significant complaints or findings related to Plaintiff's hands or other joints and instead consistently noted full range of motion of the extremities without joint tenderness, swelling, or deformities and full motor strength, intact sensation, and a symmetrical, balanced gait (Tr. 24, 693-745).  Subsequently, in January 2018, Plaintiff began treatment with a new primary care provider, Randy Kiriluk, M.D., who likewise noted normal physical examination findings, including normal gait and station, normal motor strength and tone, no tenderness, and normal movement of all extremities (Tr. 24-25, 873-96).  After that, in April 2018, Plaintiff complained of left shoulder, neck, and bilateral hand pain to Dr. Kiriluk, at which time Dr. Kiriluk opined that Plaintiff's hand pain was suggestive of possible inflammatory arthritis, although Plaintiff's laboratory studies showed normal rheumatoid factor (Tr. 25, 880-96).

As the ALJ noted, Plaintiff was then referred to Kimberly McIlwain Smith, M.D., a rheumatologist in July 2018, at which time Plaintiff described complaints of pain all throughout her body and joints rated at a 10 out of 10 (Tr. 25, 930-85).  Upon examination, Plaintiff showed some swelling, tenderness, and limitations of several joints, so Dr. McIlwain Smith referred Plaintiff for imaging and work up for possible

early inflammatory polyarthritis (Tr. 25, 930-38). X-rays of both hands identified no significant abnormalities (Tr. 25, 943-44, 947-48). Dr. McIlwain-Smith determined that those findings did not show typical signs of rheumatoid arthritis, but she could not rule out early seronegative rheumatoid arthritis (Tr. 25, 955). Subsequent treatment notes from Dr. McIlwain-Smith showed similar physical examination findings of tenderness, occasional swelling, and limitations at joints (Tr. 25, 957-85).

The ALJ went on to discuss the 2019 treatment notes as well (Tr. 25-26). As indicated, Plaintiff presented to Tampa Family Health Center in March 2019 and met with Jacquelyn Sousa, ARNP, complaining of pain in her ankles and feet due to rheumatoid arthritis and requesting a new referral to a rheumatologist (Tr. 25, 990-94). ARNP Sousa noted that Plaintiff showed abnormal motor strength with 3/5 grip strength and was unable to use her upper body strength to push a wheelchair, each of which she attributed to severe rheumatoid arthritis (Tr. 25, 992). Plaintiff received her requested referral and additional referrals for a cane and motorized scooter (Tr. 25, 993). The next month, ARNP Sousa made similar findings regarding upper extremity weakness and noted tenderness and bilateral deformity of the joints in the hands (Tr. 25, 1022-31).

The ALJ then described Plaintiff's May 2019 treatment with Gina Prakash, M.D., a rheumatologist (Tr. 25-26, 1010-17). As the ALJ indicated, plaintiff presented with complaints of joint pain, stiffness, weakness, and fatigue (Tr. 25, 1010). Plaintiff indicated her symptoms were moderate, ranging from a two to an eight on a 10-point scale (Tr. 25, 1010). Upon examination, Plaintiff was in no acute distress and showed

tenderness in the feet, but no other tenderness or swelling was noted, including in the hands and wrists, and Plaintiff demonstrated normal grip and equal strength in the upper and lower extremities with no unsteadiness in her gait (Tr. 25-26, 1012-13). Dr. Prakash noted that Plaintiff had no synovitis and would consider inflammatory arthritis but wanted to obtain past records regarding Plaintiff's rheumatoid arthritis (Tr. 26, 1013-14).

As the ALJ stated, Plaintiff later met with another rheumatologist, Raquel Cuchacovich, M.D., starting in September 2019 with complaints of joint pain and swelling in her hands, wrists, shoulders, knees, ankles, feet, and neck (Tr. 26, 1122-28). Plaintiff presented in no acute distress and examination of Plaintiff's extremities showed normal results, with equal and symmetric pulses in all extremities; normal strength, sensation, and reflexes throughout; and, though showing tenderness at 12 of 18 trigger points, showed no synovitis in any of the small or large joints, no enthesitis or dactylitis, and negative Schober's test (Tr. 26, 1127-28). Dr. Cuchacovich indicated that Plaintiff's physical examination was negative for inflammatory findings but positive for trigger points, so she stated that she would work up Plaintiff for possible inflammatory polyarthritis but that, based on her clinical findings, Plaintiff showed no biomarkers for inflammatory arthritis, rheumatoid arthritis, or fibromyalgia (Tr. 26, 1128). Plaintiff returned to Dr. Cuchacovich the next month with the same complaints and similar benign findings upon examination but with an added notation that Plaintiff could complete a fist bilaterally and that X-rays were negative for inflammatory arthritis (Tr. 26, 1122-25). To assess for active inflammatory changes, Dr.

Cuchacovich ordered an MRI of Plaintiff's hands (Tr. 26, 1125). MRIs of the left and right hands taken in November 2019 showed no abnormalities except the small ganglion cyst at the dorsal aspect of the right wrist (Tr. 26, 1143-45).

The ALJ next discussed Plaintiff's treatment with Dr. Abd Alrahman Benni at the Pain Healing Center from November 2019 through June 2020 (Tr. 26, 1153-81). As the ALJ noted, Plaintiff reported to Dr. Benni complaining of pain all over her body and joint pain from her neck with associated headaches, reporting pain at a seven out of 10 with medications providing no relief (Tr. 26, 1177-81). Plaintiff was in no acute distress and showed normal range of motion and strength and no joint enlargement or tenderness in her upper and lower extremities bilaterally and additionally showed equal and symmetric reflexes with sensation intact to touch (Tr. 26, 1179). During her treatment with Dr. Benni, Plaintiff reported improvement with medication he prescribed, and Plaintiff continued to demonstrate similar findings upon examination (Tr. 26, 1153-76).

After discussing the medical evidence of record at length, the ALJ succinctly summarized his findings pertaining to the limitations stemming from Plaintiff's hand impairments:

> The claimant's complaints are indeed significant. However, the medical evidence of record does not support the degree of limitations alleged by the claimant. The claimant appeared to have near full resolution of range of motion in her left, non-dominant hand after her trigger finger release surgeries. The claimant's more widespread pain complaints did not begin until over a year after the alleged onset date. Even so, the claimant's various physical examination findings typically noted mild to moderate findings, with the most frequent findings being subjective in nature, such as pain, tenderness, and subjectively decreased sensation.

> Although the claimant's primary care provider noted 3/5 grip strength in the claimant's upper extremities, several of the claimant's other providers, including specialists, have noted normal upper extremity and grip strength. Only occasional, mild joint swelling was noted by the claimant's initial rheumatologist with no evidence of synovitis. Numerous diagnostic studies fail to show more than relatively mild findings. There is still some question about whether the claimant's symptoms are truly related to inflammatory arthritis or possible seronegative rheumatoid arthritis, as her biomarker workup has been largely negative.
>
> ***
>
> Accordingly, after careful consideration of the medical record and other evidence of record and the allegations made by the claimant and on her behalf, the undersigned finds that it is appropriate to limit the claimant to light exertional work activity because of her pain, upper extremity weakness, fatigue, and limited mobility, secondary to her combined physical impairments, most significantly her inflammatory arthritis, but also taking into consideration the possibility of abdominal pain secondary to her uterine prolapse and subsequent surgery. Because of the claimant's pain in her hands and reduced grip strength, in addition to limiting the claimant to a light range of lifting and/or carrying, handling would be limited to frequently, bilaterally.

(Tr. 28, 29) (internal citations omitted). The ALJ also discussed several medical opinions of record regarding limitations from Plaintiff's physical impairments, including her hand impairments, and addressed the persuasiveness of each (Tr. 30-33).

Against that backdrop, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's trigger finger condition nor account for it properly in the RFC. As the foregoing illustrates, however, the ALJ comprehensively and meticulously considered Plaintiff's trigger finger condition and arthritic condition in setting forth Plaintiff's RFC. The evidence showed that, although Plaintiff may have experienced some pain and tenderness, her trigger finger condition did not limit Plaintiff to the extent alleged

nor rise to the level of disabling. Instead, the ALJ appropriately accounted for the limitations related to Plaintiff's trigger finger condition by limiting Plaintiff to only frequent handling bilaterally (Tr. 22). In setting forth that limitation, the ALJ applied the appropriate legal standards and provided substantial evidence in support. Accordingly, the ALJ did not err in failing to include any further limitations relating to Plaintiff's trigger finger condition.

        B.      *Headaches*

As to Plaintiff's headaches, Plaintiff contends that the ALJ failed to adequately address or account for Plaintiff's headaches and related symptoms. She points only to her testimony and her complaints to medical practitioners regarding her headaches but identifies no limitations stemming from such headaches nor any objective evidence in support of any limitations from such headaches (Doc. 22, at 10; Tr. 75-76, 1010, 1061, 1159, 1165, 1171, 1177).[4] To reiterate, diagnosis of a listed impairment is not alone sufficient without corroborative medical evidence supported by clinical and laboratory findings. *Carnes*, 936 F.2d at 1218. Rather, Plaintiff must show the effect her headaches have on her ability to work, rather than simply relying on the diagnosis. *Davis*, 153 F. App'x at 572; *McCruter*, 791 F.2d at 1547.

---

[4] Plaintiff also cites to records submitted only to the Appeals Council (Doc. 22, at 10; Tr. 97, 101, 105). As the Commissioner argues, those records were not before the ALJ, so, because Plaintiff did not challenge or request review of the Appeals Council's decision to deny review, Plaintiff waived any arguments pertaining to those records. Even if Plaintiff had not waived her arguments as to those records, consideration of the records would not change the outcome.

In the decision, the ALJ acknowledged Plaintiff's complaints of migraine headaches and found that her headaches constituted a severe impairment (Tr. 18). As the ALJ highlighted, Plaintiff's treatment notes documented that Plaintiff consistently presented in no acute distress with normal neurological examinations despite complaints of experiencing headaches for months (Tr. 25-27, 1010-13, 1109, 1159, 1161, 1165, 1167, 1171, 1173, 1177, 1179). Given Plaintiff's complaints, Kavita Kalidas, M.D., a neurologist, prescribed Plaintiff medication for prevention and rescue and ordered MRI and MRA tests in January 2020 (Tr. 1113). As the ALJ discussed, testing revealed only nonspecific T2 hyperintensity in the right frontal lobe (Tr. 27, 1142-43). The medical evidence therefore did not support significant limitations related to Plaintiff's headaches, and Plaintiff fails to identify any.

Regardless, the ALJ provided environmental restrictions specifically tailored to address any limitations relating to Plaintiff's headaches (Tr. 22). Namely, the ALJ stated that, because of her migraine headaches and her history of asthma, Plaintiff would need to avoid concentrated exposure to fumes, odors, dust, gasses, and pulmonary irritants (Tr. 22, 29). The ALJ went further, adding cognitive limitations to manage Plaintiff's stress levels and account for her difficulties in concentration, persistence, and maintaining pace due to her depressive and anxiety/panic disorders as well as the possibility of fatigue and distracting pain impairing those abilities (Tr. 30). To account for those limitations, the ALJ limited Plaintiff to simple, routine tasks and to low-stress work, thereby precluding work requiring arbitration, negotiation, confrontation, conflict resolution, and directing the work of others or being responsible

for the safety and welfare of others as the primary function of the job, while also noting that Plaintiff could perform tasks and maintain focus needed to perform Reasoning level 1 and 2 jobs but could not perform fast-paced or production-pace work (Tr. 22, 30). Accordingly, the ALJ did not err in considering or accounting for limitations relating to Plaintiff's headaches.

IV. *Conclusion*

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 22nd day of March, 2023.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record